# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID RUDD, )<br>5820 Greentree Road )<br>Bethesda, MD 20817 )<br>   )<br>   Plaintiff, )<br>   )<br>v.   )     Civil Action No.<br>   )<br>DOCUMENT TECHNOLOGIES, LLC )<br>1300 Pennsylvania Avenue, NW )<br>Suite 851 )<br>Washington, DC  20004 )<br>   )<br>   Serve Registered Agent: )<br>   Cogency Global, Inc. )<br>   1025 Vermont Ave., NW )<br>   Suite 1130 )<br>   Washington, DC 20005 )<br>   )<br>   and )<br>   )<br>DECHERT, LLC, )<br>1900 K Street, NW )<br>Washington, DC 20006 )<br>   )<br>   Serve Registered Agent: )<br>   CT Corporation System )<br>   1015 15th Street, NW )<br>   Washington, DC 20005 )<br>   )<br>   Defendants. )<br>_____ ) | |

## COMPLAINT

COMES NOW Plaintiff, David Rudd, by and through undersigned counsel, and files his Complaint against Defendants Document Technologies, LLC and Dechert, LLC, as joint employers, for unlawful discrimination in employment because of Plaintiff's disability and because Plaintiff engaged in activity protected under the Americans with Disabilities Act and the District of Columbia Human Rights Act.

Introduction

1. This is a civil proceeding seeking back pay, front pay, compensatory and punitive damages and injunctive relief for Defendants' violations of Plaintiff's rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 11201, et seq. and the District of Columbia Human Rights Act ("DCHRA"), §§ 2-1401.01, et seq.

Jurisdiction

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

3. On or around May 31, 2018, Plaintiff filed timely administrative charges of discrimination against Defendants with the District of Columbia Office of Human Rights (DCOHR), which were cross-filed with the Equal Employment Opportunity Commission ("EEOC"). On or around October 4, 2019, the DCOHR closed Plaintiff's case without making any findings as to the merits of his allegations. On or around December 4, 2019, the EEOC issued Notices of Right to Sue, permitting Plaintiff to file an action under the ADA.

4. Venue in this Court is proper under 28 U.S.C. in § 1391, as the unlawful employment practices complained of herein were committed in the District of Columbia.

Parties

5. Plaintiff, David Rudd, is a citizen of the United States and a resident of Maryland. Plaintiff was jointly employed by Defendants in the District of Columbia from January 9, 2017 through October 20, 2017.

6. Defendant Document Technologies, LLC ("DTI") is an "employer" within the meaning of the ADA and the DCHRA. At all times relevant hereto, Defendant DTI had an office in the District of Columbia, where it regularly conducted business and where unlawful acts complained of herein occurred. Upon information and belief, DTI is also known as "Epiq" or "Epiq Global," following a corporate transaction between DTI and Epiq Systems, Inc.

2

7. Defendant Dechert is also an "employer" within the meaning of the ADA and the DCHRA. At all times relevant hereto, Defendant Dechert had an office in the District of Columbia, where it regularly conducted business and where unlawful acts complained of herein occurred. Dechert, by virtue of its authority to hire and fire Plaintiff, and otherwise exercise control over the terms and conditions of his employment as discussed more fully below, jointly employed Plaintiff together with DTI.

Facts

8. Defendant DTI provided administrative services to Dechert, which were an integral part of Dechert's business, pursuant to a contractual relationship. These services included printing, copying, hospitality, IT support, reception support, record-keeping and mail collection and distribution services. At the time of the events at issue, approximately nine DTI employees performed services on Dechert's premises.

9. Plaintiff commenced employment with Defendants on or around January 9, 2017. Plaintiff held that position of Site Manager at Defendant Dechert's office at 1900 K Street, NW, Washington, DC, 20008. In this capacity, Plaintiff was responsible for managing the DTI employees on-site at Dechert's office.

10. Before he was hired, Plaintiff had interviews with managers from both DTI and Dechert. Upon information and belief, Plaintiff was hired by DTI only after Defendant Dechert approved of his hiring to serve as Site Manager on its premises.

11. Plaintiff was instructed that he was expected to communicate with Dechert's Regional Office Manager, Donnie Wood, on a regular basis. Plaintiff did so, and Ms. Wood regularly assigned and directed Plaintiff in the performance of his work.

12. Plaintiff's work schedule was subject to the direction and control of Defendant Dechert, which also supplied the equipment Plaintiff used in the performance of his duties.

13. Upon information and belief, Defendant Dechert evaluated Plaintiff's work and made reports to Defendant DTI concerning his performance.

14. On June 11, 2017, Plaintiff suffered a stroke, which required hospitalization and rehabilitation. Plaintiff's stroke substantially limited Plaintiff in major life activities including, but not limited to, walking. As such, it constituted a "disability" as defined under the DCHRA.

15. As a result of his stroke, Plaintiff requested, and received, a medical leave of absence until early-September 2017.

16. Upon information and belief, Dechert communicated with DTI regarding Plaintiff's performance. In or around April 2017, Plaintiff was informed by a DTI manager that Ms. Wood had told DTI that Plaintiff was not meeting with her on a daily basis, as Dechert expected. Ms. Wood also told Plaintiff that she believed he should delegate more work to his staff, instead of performing it himself.

17. On August 31, 2017, Plaintiff received a performance evaluation from David Hess, DTI's Operations Manager. Mr. Hess informed Plaintiff that he had received a rating of 3.99, which was just below the cutoff score of 4.00 for "exceeds expectations." Plaintiff also received a two-percent pay increase. Upon information and belief, this evaluation was based, at least in part, on Dechert's feedback concerning Plaintiff's performance.

18. Shortly thereafter, Plaintiff returned to work at Dechert in a part-time capacity. While Plaintiff's movements were slowed from the effects of his stroke, and he used a cane and leg brace, he performed all of his job duties successfully.

19. Following his return from medical leave, Plaintiff found that Ms. Wood was frequently unavailable to meet with him, and ignored his efforts to schedule meetings. Upon information and belief, Ms. Wood chose to meet with another DTI employee instead of Plaintiff. That employee, Herb Smith, had assumed Plaintiff's duties during his absence.

20. Plaintiff resumed a full-time schedule at Dechert on or about October 9, 2017. Less than two weeks later, on October 20, 2017, DTI informed Plaintiff that he was being terminated at Dechert's request.

21. DTI informed Plaintiff that Dechert had been dissatisfied with his performance. However, Plaintiff had received no prior disciplinary action or counseling from DTI concerning alleged performance deficiencies, other than being informed that Ms. Wood wished to meet with him more regularly. Upon information and belief, Plaintiff's role as Site Manager at Dechert's location was assumed by Mr. Smith, who is not disabled.

22. At the time of Plaintiff's termination, Defendant DTI informed him that he remained eligible for other positions with DTI, and encouraged him to apply for future openings.

23. Plaintiff applied for vacant positions with DTI in November and December 2017, and in February 2018. Plaintiff was not interviewed or hired for any of these positions, in spite of having the requisite qualifications.

24. On or around May 11, 2018, through his legal counsel, Plaintiff sent a letter to DTI in which he contended that he had been subjected to unlawful discrimination in employment under the ADA and DCHRA.

25. Plaintiff has since applied with Defendant DTI for several additional vacant positions for which he was qualified. However, he has not been hired, or even interviewed, for any of the positions for which he has applied.

## Statement of Claims

### COUNT ONE
(Discrimination Because of Disabilities in Violation of the ADA)
(Against DTI and Dechert)

26. Plaintiff repeats and realleges paragraphs 1 through 25 of this Complaint as fully and with the same force and effect as if herein at length set forth.

27. Defendants terminated Plaintiff's employment because of his disability or, in the alternative, because they regarded him as being disabled.

28. Defendants' actions constituted unlawful discrimination in violation of the ADA, 42 U.S.C. § 12112.

29. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered harm including lost earnings, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

30. Defendants engaged in intentional unlawful discrimination with malice and reckless indifference to the rights of Plaintiff, justifying, inter alia, an award of punitive damages.

### COUNT TWO
(Retaliation in Violation of the ADA)
(Against DTI and Dechert)

31. Plaintiff repeats and realleges paragraphs 1 through 30 of this Complaint as fully and with the same force and effect as if herein at length set forth.

32. Plaintiff's requests for a medical leave of absence and a part-time work schedule following his stroke constituted protected activity covered under the ADA.

33. Defendants terminated Plaintiff in retaliation for his protected activity in violation of the ADA, 42 U.S.C. § 12203.

34. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered harm including lost earnings, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

35. Defendants engaged in intentional unlawful discrimination and retaliation with malice and reckless indifference to the rights of Plaintiff, justifying, inter alia, an award of punitive damages.

## COUNT THREE
(Discrimination and Retaliation in Violation of the ADA with Regard to Hiring)
(Against DTI)

36. Plaintiff repeats and realleges paragraphs 1 through 35 of this Complaint as fully and with the same force and effect as if herein at length set forth.

37. Defendant DTI has refused to hire Plaintiff for other positions since his termination in October 2017 because of his disability or, in the alternative, because it regards him as being disabled.

38. Defendant DTI has also refused to hire Plaintiff for other positions since his termination in October 2017 because of his requests for accommodations prior to his termination, and/or because he has complained of unlawful discrimination and retaliation.

39. Defendant DTI's refusal to hire Plaintiff constitutes unlawful discrimination and retaliation for his protected activity in violation of the ADA, 42 U.S.C. § 12203.

40. As a direct and proximate result of Defendants DTI's unlawful conduct, Plaintiff has suffered harm including lost earnings, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

41. Defendant DTI engaged in intentional unlawful discrimination and retaliation with malice and reckless indifference to the rights of Plaintiff, justifying, inter alia, an award of punitive damages.

## COUNT FOUR
### (Discrimination Because of Disabilities in Violation of the DCHRA)
### (Against DTI and Dechert)

42. Plaintiff repeats and realleges paragraphs 1 through 41 of this Complaint as fully and with the same force and effect as if herein at length set forth.

43. Defendants terminated Plaintiff's employment because of his disability or, in the alternative, because they regarded him as being disabled.

44. Defendants' actions constituted unlawful discrimination in violation of the DCHRA, D.C. Code § 2-1401.01 et seq.

45. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered harm including lost earnings, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

46. Defendants engaged in intentional unlawful discrimination with malice and reckless indifference to the rights of Plaintiff, justifying, inter alia, an award of punitive damages.

## COUNT FIVE
### (Retaliation in Violation of the DCHRA)
### (Against DTI and Dechert)

47. Plaintiff repeats and realleges paragraphs 1 through 46 of this Complaint as fully and with the same force and effect as if herein at length set forth.

48. Plaintiff's requests for a medical leave of absence and a part-time work schedule following his stroke constituted protected activity covered under the DCHRA.

49. Defendants terminated Plaintiff in retaliation for his protected activity in violation of the DCHRA, D.C. Code § 2-1401.01 et seq.

50. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered harm including lost earnings, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

51. Defendants engaged in intentional unlawful discrimination and retaliation with malice and reckless indifference to the rights of Plaintiff, justifying, inter alia, an award of punitive damages.

COUNT SIX
(Discrimination and Retaliation in Violation of the DCHRA with Regard to Hiring)
(Against DTI)

52. Plaintiff repeats and realleges paragraphs 1 through 51 of this Complaint as fully and with the same force and effect as if herein at length set forth.

53. Defendant DTI has refused to hire Plaintiff for other positions since his termination in October 2017 because of his disability or, in the alternative, because it regards him as being disabled.

54. Defendant DTI has also refused to hire Plaintiff for other positions since his termination in October 2017 because of his requests for accommodations prior to his termination, and/or because he has complained of unlawful discrimination and retaliation.

55. Defendant DTI's refusal to hire Plaintiff constitutes unlawful discrimination and retaliation for his protected activity in violation of the DCHRA, D.C. Code § 2-1401.01 et seq.

56. As a direct and proximate result of Defendants DTI's unlawful conduct, Plaintiff has suffered harm including lost earnings, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

57. Defendant DTI engaged in intentional unlawful discrimination and retaliation with malice and reckless indifference to the rights of Plaintiff, justifying, inter alia, an award of punitive damages.

## PRAYER FOR RELIEF

Wherefore, Plaintiff demands judgment against Defendants, jointly and severally as to Counts One, Two, Four and Five, and against Defendant DTI alone on Counts Three and Six, as follows:

1. Entry of judgment on Plaintiff's behalf on the causes of action contained herein;

2. A declaration that Defendants' conduct was in violation of the ADA and the DCHRA, and in contravention of law and public policy;

3. Back pay and benefits lost as a result of the discriminatory and retaliatory conduct of Defendants, in an amount to be determined at trial;

4. Reinstatement to her position with Defendants, or to a like or equivalent job, or in the alternative an award of front pay, to compensate Plaintiff for the loss he will continue to suffer;

5. Compensatory damages, including damages for the emotional distress caused by Defendants' discriminatory and wrongful conduct, in an amount to be determined at trial;

6. Injunctive relief prohibiting Defendants from engaging in unlawful retaliation and discrimination on the basis of disabilities;

7. An award of punitive damages in an amount appropriate to the proof at trial;

        8.      Court costs, expenses, attorney's fees, and prejudgment and post-judgment interest; and

        9.      Such other and further relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues properly triable before a jury.

Respectfully submitted,

PARGAMENT & HALLOWELL, PLLC

January 17, 2020

/s/ Jeffrey J. Pargament
Jeffrey J. Pargament, Esq.
D.C. Bar No. 412620
jpargament@pandhlaw.com
Frank C. Gulin
D.C. Bar No. 440797
fgulin@pandhlaw.com
1776 K Street, N.W., Suite 825
Washington, DC  20006
(202) 775-0707 (telephone)
(202) 775-0733 (facsimile)

Attorneys for Plaintiff